No. 18        February 19, 2021        439

IN THE OREGON TAX COURT
REGULAR DIVISION


TESORO LOGISTICS
NORTHWEST PIPELINE LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5252 (Control); TC 5771;
TC 5292; TC 5313; TC 5350; TC 5395)

On cross-motions for summary judgment on whether the maximum assessed value (MAV) of centrally assessed property could be redetermined when Plaintiff purchased the property from another company, Plaintiff argued that the property did not fall under Measure 50's "new property or new improvements" exception under Article XI, section 11(1)(c)(A), of the Oregon Constitution and ORS 308.149(6)(a). Plaintiff further argued that even if the exception applied, ORS 308.162(1) required the Department of Revenue (department) to apply the MAV as determined under the previous owner's centrally assessed account. The court readily concluded that the exception for "new property" within the meaning of ORS 308.149(6) applied. *DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 271, 434 P3d 379 (2019). However, the court concluded that the criteria to apply ORS 308.162(1) were satisfied, and that the property "attributable to" the previous owner for the previous tax year was merely "changed to" Plaintiff's account for the tax year at issue. *DISH Network*, 364 Or at 284-85. Therefore, the court granted Plaintiff's motion and ordered the department to reduce the MAV of the property to the MAV shown on the previous owner's account.

Oral argument on cross-motions for summary judgment was held remotely on December 10, 2020.

Cynthia M. Fraser, Foster Garvey PC, Portland, filed the motion and argued the cause for Plaintiff.

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant.

Decision rendered February 19, 2021.

**ROBERT T. MANICKE, Judge.**

### I.   INTRODUCTION

The parties ask the court to determine the maximum assessed value (MAV) of the taxable property in

Oregon assessed to Plaintiff (taxpayer), a centrally assessed taxpayer, for tax year 2014-15 (the "Property"). The real market value (RMV) is not at issue; on November 20, 2015, the court entered a Partial Stipulated Judgment determining the RMV. After abeyance pending final resolution of cases including *DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 434 P3d 379 (2019), the parties now present cross-motions for summary judgment in case TC 5252 and consolidated cases involving later tax years.[1]

The Supreme Court's opinion in *DISH Network* explains important legal background relevant to this case, providing (1) an overview of the "central assessment" of property used in certain businesses, including the longstanding concept of valuing the company's worldwide property as a "unit" and allocating a portion of that value to the property in Oregon; (2) an overview of the more recent MAV limitation on the growth of the assessed value of a "unit of property" under Article XI, section 11, of the Oregon Constitution ("Measure 50") and implementing statutes; (3) a detailed analysis of the "exception" that allows MAV to be redetermined when "new property" is added to the assessable "unit of property"; and (4) a discussion of ORS 308.162(1),[2] which has the practical effect of preserving the MAV, notwithstanding the "new property" exception, if property attributable to one account is changed to another account. *See DISH Network*, 364 Or at 257-62. The relevant constitutional provisions and statutes have not changed materially between the law in effect for the tax year 2009-10 at issue in *DISH Network* and the law in effect for tax year 2014-15 and the Later Years.[3] As in *DISH Network*, this case requires the

---

[1] After issuing the Partial Stipulated Judgment, at the parties' request, the court placed case TC 5252 in abeyance. As other centrally assessed taxpayers' cases involving MAV computation proceeded, taxpayer filed an appeal for each new tax year (collectively, the "Later Years"): TC 5271 involves tax year 2015-16; TC 5292 involves tax year 2016-17; TC 5313 involves tax year 2017-18; TC 5350 involves tax year 2018-19; TC 5395 involves tax year 2019-20. At the parties' request, the court consolidated each of the Later Year cases with case TC 5252 and held all of the consolidated cases in abeyance.

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to the 2013 edition.

[3] The Supreme Court referred to the 2007 edition of the ORS in *DISH Network. See* 364 Or at 256 n 1. The definition of "new property or new improvements" under ORS 308.149(5) that the court discussed in *DISH Network* was

court to consider the "new property" exception and the possible effect of ORS 308.162(1).

## II. FACTS

The record establishes the following facts. Taxpayer, through other affiliates, is owned indirectly but entirely by Tesoro Logistics LP, a publicly traded limited partnership in the business of "gathering" crude oil, as well as "terminalling," transporting and storing crude oil and refined oil products, including through pipelines. On June 19, 2013, taxpayer and another affiliate wholly owned by Tesoro Logistics LP bought the "Northwest Products System" from Chevron Pipe Line Company and Northwest Terminalling Company (collectively, "Chevron") for a total purchase price of $354.8 million before certain adjustments.[4] The Northwest Products System consists of (1) a federally regulated petroleum products pipeline extending from Salt Lake City, Utah, through southern Idaho and eastern Oregon to Spokane, Washington, as well as (2) other assets including a five-mile jet fuel pipeline connecting to the Salt Lake City airport and certain products terminal rights, properties, facilities, and equipment located in Idaho and Washington. Before acquiring the Northwest Products System, taxpayer had no property in Oregon subject to local or central assessment.

---

recodified in the 2013 edition as ORS 308.149(6). The definition did not change with the renumbering. Similarly, in *DISH Network*, the Supreme Court quoted ORS 308.510(6), *see* 364 Or at 266-67, which was recodified (but not substantively altered) in 2009 as ORS 308.510(5).

[4] The other affiliate was Tesoro Logistics Operations LLC. Taxpayer describes itself as a wholly owned subsidiary of Tesoro Logistics Operations LLC, and Tesoro Logistics Operations LLC is shown as a 100 percent direct subsidiary of Tesoro Logistics LP on an organizational chart submitted to the Securities and Exchange Commission. Each party describes the June 19, 2013, transaction as an acquisition by Tesoro Logistics LP. However, neither party bases any argument on the specifics of which of the three commonly owned entities acquired or operated the Property, as among taxpayer, its parent Tesoro Logistics Operations LLC, or that company's parent Tesoro Logistics LP. The court finds this unsurprising, given the broad definition of a listed "company" as including "any group of persons, whether organized or unorganized" and the department's authority to assess property to its "user," regardless of ownership. *See* ORS 308.505(8) (defining "company"); ORS 308.517 (property assessed to "user"). Accordingly, for purposes of this order, the court treats the June 19, 2013, transaction as an acquisition by taxpayer, ignoring any separate role by Tesoro Logistics Operations LLC or Tesoro Logistics LP.

For tax year 2013-14 and prior years, the department maintained a centrally assessed property tax account for Chevron that included the Oregon portion of the Northwest Products System. The parties differ in their description of what, exactly, was centrally assessed to Chevron and what is now centrally assessed to taxpayer. Their differences stem, in part, from fundamentally different understandings and uses of terms involving the word "unit," as will be discussed below.[5] The uncontradicted evidence, however, indicates that property constituting the Oregon portion of the Northwest Products System was assessed to Chevron for tax year 2013-14, and taxpayer acquired and continued to hold that property as of the January 1, 2014, assessment date for tax year 2014-15. The dispute arises because the MAV that the department has assigned to taxpayer's account on the central assessment roll and that the department asks the court to uphold ($38,723,000) is substantially higher than the MAV that the department previously assigned to Chevron's account on the central assessment roll ($10,786,200). After initially using the MAV set for tax year 2013-14, an act that the department now asserts was a mistake, the department determined the MAV for tax year 2014-15 by following the normal procedures for new centrally assessed property, without regard to the 2013-14 MAV.[6] Subject to any adjustments as noted below, taxpayer asks the court to determine that the MAV for tax year 2014-15 is the same as that assigned to Chevron's account for tax year 2013-14.

## III.   ISSUES

(1)   Did taxpayer's acquisition of the Northwest Products System cause the exception under Article XI, section 11(1)(c)(A), of the Oregon Constitution and ORS 308.149(6)(a) for "new property or new improvements"

---

[5] The department also alleges that taxpayer may have made improvements or gained synergies as a result of the transaction. The court addresses these points below as well.

[6] The department determined the 2014-15 MAV by first determining the RMV of taxpayer's property within and without Oregon, next allocating a portion of that value to Oregon based on a formula, and finally multiplying the result by the so-called "changed property ratio," which was 1.0. At least for purposes of its motion, taxpayer contests nothing about these specific steps; rather, taxpayer contends that none of them were necessary because the department should have applied the MAV from tax year 2013-14.

to apply for purposes of determining the MAV for tax year 2014-15?

(2)  If so, does ORS 308.162(1) nevertheless require the department to apply the MAV as determined for Chevron's centrally assessed account for tax year 2013-14, to the property attributable to taxpayer's account for tax year 2014-15, subject to any new property or new improvements that might have been made on or after January 1, 2013, and before January 1, 2014?

## IV.   LEGAL BACKGROUND

### A.   *DISH Network*

In *DISH Network*, the court analyzed the taxpayer's and the department's competing arguments regarding the meaning of "new property or new improvements," which means "changes in the value of property as the result of * * * [t]he addition of machinery, fixtures, furnishings, equipment or other taxable real or personal property to the property tax account." *See* 364 Or 254; ORS 308.149(6)(a)(C). *DISH Network* involved items that the taxpayer had owned in prior tax years (set-top boxes and other items that enabled the taxpayer's customers to receive its transmissions of television programming), and that had been locally assessed for those years. *See* 364 Or at 262-63. When the department, in light of the Supreme Court's decision in another case,[7] determined that the taxpayer in *DISH Network* was subject to central assessment, the taxpayer argued that the MAV previously assigned to each item by a county assessor continued to apply for the year for which the taxpayer was first centrally assessed. *Id.* at 263-64. The taxpayer argued, based on this court's decision in *Comcast Corp. III v. Dept. of Rev.*, 22 OTR 233 (2016), that "new property" is limited to property newly created or acquired by the taxpayer within a certain time before the assessment date, and does not include property that an assessor adds to the roll by the "unilateral" action of subjecting the taxpayer to central assessment for the first time. *DISH Network*, 364 Or at 268. The Supreme Court rejected this argument, concluding:

---

[7]  *DIRECTV, Inc. v. Dept. of Rev.*, 360 Or 21, 377 P3d 568 (2016).

"[F]or purposes of ORS chapter 308, 'new property or new improvements' is not limited to property that has been created or acquired by the taxpayer within some designated time period, but includes all property that is lawfully added by the assessor to a taxpayer's property tax account on an assessment roll. Property that has not previously been assessed under a different account is 'new property,' but it must be valued as though the change in accounts had not occurred. *** [T]hat meaning accounts for ORS 308.162(1), which precludes [r]evaluation of property that is moved from one property tax account to another."[8]

*Id.* at 285.

In reaching this conclusion, the court clarified that a property tax "account," for purposes of the definition of "new property or new improvements" in ORS 308.149(6), refers not only to the administrative division used for listing property in the *local* assessment rolls. Rather, for centrally assessed property, "account" refers to the single account that the department generally establishes *for each company* maintaining a business listed in ORS 308.515(1). *Id.* at 270. Therefore, "new property" "includes additions to the accounts of companies on the central assessment roll." *Id.* at 271; *see also, e.g.*, *id.* at 277 ("new" means "new to a property tax account on an assessment roll").

The court next rejected the taxpayer's argument that the items at issue must retain their MAV because they previously had been assessed under a different property tax account. The court explained that ORS 308.555 allows the department to value as a unit the entire property, within and without Oregon—including not only real property and tangible personal property, but also intangible property—that a company uses in performing a listed business. *Id.* at 292. After determining the value of that potentially worldwide unit, the department may allocate a portion of that value to the property in Oregon based on a formula prescribed by statute or by another reasonable method, pursuant to ORS 308.550(1) or (2). *Id.* at 292-93. The court concluded that

---

[8] *Cf. DISH Network*, 364 Or at 284 ("ORS 308.162(1) does not define 'new property'; instead it precludes *revaluation* of property that previously has been assessed under a different property tax account." (Emphasis added.)).

> "the property [the department] added to DISH's newly-created account in the 2009-10 central assessment roll was not the same, in whole or in part, as the tangible real and personal property that previously had appeared in DISH's property tax accounts in the various local assessment rolls. In fact, the unit of property (or proportion thereof) that was added to the central assessment roll had never previously been assessed in *any* manner."

*Id.* at 293 (emphasis in original). For that reason, the exception for "new property" under ORS 308.149(6) applied, ORS 308.162(1) did not apply, and a new MAV was required to be determined for all property added to the new central assessment account for the taxpayer. *Id.*

B.  *Worldwide Valuation "Unit" Under ORS 308.555 vs. Oregon-assessable "Unit of Property"*

In interpreting the central assessment laws as construed in *DISH Network*, the parties refer to two concepts that include the notion of a "unit." The court now distinguishes those concepts before proceeding with the analysis. First, the concept of "unit valuation" of property within and without Oregon is specifically endorsed for businesses listed for central assessment. *See* ORS 308.555; *DISH Network*, 364 Or at 256 (describing process under ORS 308.555 as "unit valuation"); *Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 56, 664 P2d 401 (1983) (same). This court sometimes refers to the potentially *worldwide* grouping of real property and tangible and intangible personal property used in the business as the "valuation unit," because its sole function is to establish an overall value, a portion of which the department then allocates to the Oregon-situs property under ORS 308.550.

Second, the term "unit of property," as used in Measure 50, may apply to centrally or locally assessed property, but in either case it refers only to property *in Oregon*, which the state or its localities have jurisdiction to assess and tax under the United States Constitution. *See* Or Const Art XI, § 11(1)(a) ("each *unit of property in this state* shall have a maximum assessed value" (emphasis added)); ORS 308.510(5) ("For purposes of determining the maximum assessed value of property under section 11, Article XI of the

Oregon Constitution, 'property' means all property *assessed to* each company that is subject to assessment under ORS 308.505 to 308.665." (Emphasis added.)); ORS 308.142(1)(b) ("property" means "total *statewide* value of all property *assessed to*" a company maintaining a listed business (emphases added)); *see also Cleveland, C., C. & St. L. Ry. Co. v. Backus*, 154 US 439, 446, 14 S Ct 1122, 38 L Ed 1041 (1894) (state may "exercise the power of equal taxation upon all private property *within its territorial limits*" but may determine value of in-state property as share of value of interstate unit (emphasis added)). In drafting Measure 50 and its implementing statutes, the legislature chose to identify the "unit of property" with a property tax account. *See Flavorland Foods v. Washington County Assessor*, 334 Or 562, 54 P3d 582 (2002) (voters adopting Measure 50 intended "each unit of property in this state" to refer to all property in a property tax account; rejecting taxpayer's argument that separate MAV might exist for land vs. improvements within a single account).[9] As summarized above, the Supreme Court concluded in *DISH Network* that the account for centrally assessed property, for Measure 50 purposes, is the account the department establishes for each company. *See* 364 Or at 270. This account contains "all property *assessed to*" the company (emphasis added); that property is a "unit of property" with its own MAV.

The court summarizes the relationship between the two terms that use the word "unit" in the context of central assessment and Measure 50 as follows. The MAV of a new "unit of property" in Oregon is determined by first valuing the larger, worldwide "valuation unit" under ORS 308.555 and then allocating a portion of that value to the Oregon unit of property under ORS 308.550. This exercise produces the "total statewide value" of the unit of property—its RMV—under ORS 308.142(1)(b). Because the

---

[9] The Supreme Court later cautioned that the appropriate unit to consider in applying the income approach when *valuing* locally assessed property is not necessarily confined to a single account that an assessor establishes for a particular parcel. *See Dept. of Rev. v. River's Edge Investments, LLC*, 359 Or 822, 842, 377 P3d 540 (2016); *see also* OAR 150-308.205-(A) (2015), *renumbered as* OAR 150-308-0240 (department's longstanding rule, under legislatively delegated authority, defining "unit of property" without reference to accounts as "the item, structure, plant, or integrated complex as it physically exists on the assessment date").

unit of property is "new," its MAV is set under the provisions governing new property or new improvements in ORS 308.153. Under ORS 308.153(2)(a), that RMV is reduced by the RMV of any "retirements." Under ORS 308.153(1)(b), the remaining net RMV is multiplied by the changed property ratio, which results in the MAV of the unit of property. The MAV of any unit of property, whether centrally or locally assessed, "shall not increase by more than three percent from the previous year," unless one of six exceptions applies. Or Const, Art XI, § 11(1); *see DISH Network*, 364 Or at 259.

## V.   ANALYSIS

A.   *Does the exception for "new property or new improvements" apply in this case?*

        Turning to the first issue in this case, it is clear that the department properly established an account for taxpayer, and therefore a new unit of property, on the central assessment roll for tax year 2014-15. Taxpayer is engaged in a business listed for central assessment in ORS 308.515(1)(L) (the "Pipeline" business), and by the assessment date of January 1, 2014, taxpayer unquestionably was performing that business in Oregon. It also is clear that the department was entitled to add the Property to taxpayer's account, as taxpayer owned the Property for use in its business. *See* ORS 308.517(1) (department "shall" assess to the "user" all property "owned, leased, rented, chartered or otherwise held for or used by it" in performing a listed business). Under *DISH Network*, therefore, this court readily concludes that the exception for "new property" within the meaning of ORS 308.149(6) must apply. *See DISH Network*, 364 Or at 271 ("new property" for purposes of ORS 308.149 "includes additions to the accounts of businesses on the central assessment roll").

B.   *Does ORS 308.162(1) preclude redetermination of the MAV for the Property?*

        Taxpayer argues that, even if the Property otherwise is within the definition of "new property," ORS 308.162(1) prohibits the department from assigning a MAV to the Property that exceeds the MAV in the hands of Chevron for tax year 2013-14. ORS 308.162 provides in full:

"308.162 Property tax account modifications.

"(1)   If two or more property tax accounts are merged into a single account, or *if property that is attributable to one account is changed to another account*, the maximum assessed value of the property may be adjusted to reflect the merger or change, but the total maximum assessed value for all affected accounts may not exceed the total maximum assessed value the accounts would have had under ORS 308.146 or 308.149 to 308.166 if the merger or change had not occurred.

"(2)   If a single property tax account is divided into two or more accounts, the maximum assessed value of all property affected by the division may not exceed the total maximum assessed value of the affected property determined under ORS 308.146 or 308.149 to 308.166."

(Emphasis added.)

The Supreme Court in *DISH Network* discussed ORS 308.162(1) in some depth, as the taxpayer in that case cited the merger of property tax accounts or the change of property from one account to another as an example of an action that could be undertaken only by an assessor. 364 Or at 284. If, the taxpayer argued, such a "unilateral" action by an assessor precludes redetermination of the MAV even though the property otherwise is "new," then "unilateral" action by the taxpayer is a necessary condition for redetermination of the MAV. The Supreme Court rejected the taxpayer's premise, noting that property could be "changed" from one account to another by the *taxpayer's* action of purchasing or otherwise acquiring property that previously had appeared in a different property tax account. *Id.* The court stated:

"That property would be new in the sense that the taxpayer had not previously owned it, but it would be valued as if the change in ownership and transfer had not occurred."

*Id.* The court went on to describe the relationship between ORS 308.162(1) and the "exception" in ORS 308.153 that requires the MAV to be redetermined for "new property or new improvements":

"ORS 308.162(1) does not define 'new property'; instead, it precludes revaluation of property that previously has

been assessed under a different property tax account. That aspect of the statute is in no way inconsistent with the meaning of 'new property or new improvement' for which the department contends. Still, even if property is 'new' within that meaning, *i.e.*, property added to a tax account by an assessor, it can only be revalued as provided in ORS 308.153 if it has not previously been assessed under a different property tax account."

*Id.* at 284-85. In a footnote, the court commented:

"Thus, while the existence of ORS 308.162(1) does not alter the meaning of 'new property' in any formal sense, it has a clear practical effect on what can qualify as 'new property.'"

*Id.* at 285 n 32. Under *DISH Network*, even if property moved from one account to another is "new property," in practical terms, the property's MAV from the former account limits the amount that can be set as MAV after the property has been moved to the new account.

In this case, the court finds that property consisting of a large assemblage of pipeline assets located in Oregon was recorded under Chevron's account on the central assessment roll for tax year 2013-14 as a unit of property, and that all of that same property was recorded under taxpayer's account on the central assessment roll for tax year 2014-15. The court concludes that the criteria to apply ORS 308.162(1) are satisfied, and that the property that was "attributable to" Chevron for tax year 2013-14 was "changed to" taxpayer's account for tax year 2014-15.

The department raises two main arguments, one legal and one factual. As its legal argument, the department asserts:

"The property assessed to Chevron was assessed as a unit, under ORS 308.555, not particular assets. The property assessed to Tesoro is assessed as a unit, and not particular assets. These units are not identical. Thus it is not correct to say that the unit of property assessed to Tesoro was previously assessed to Chevron."

This argument conflates the concepts of a valuation unit and a unit of property. It is not accurate to assert that *any* property was "assessed as a unit, under ORS 308.555." Rather, the worldwide property held by each company was "valued"

as a unit under ORS 308.555, and the portion of that value that was allocated to the Oregon-situs "unit of property" became the RMV of that unit of property.[10] Only the Oregon unit of property was ever "assessed." The possibility that each company's valuation unit might be different does not necessarily affect the MAV, as the court now discusses.

The department proffers two factual differences that may exist between the property Chevron held as of January 1, 2013, and the property taxpayer held as of January 1, 2014. First, the department alleges a "possibility that [taxpayer] made improvements to the previous unit [of] property," and second, taxpayer may have achieved "operational synergies *** through the acquisition" or may have "its own intellectual property, goodwill, etc., which Chevron could not have previously owned." The court addresses each of these assertions.

As to improvements, the department refers to possible "control center improvements." Assuming these improvements involve property in Oregon, the department offers no explanation why any such improvements are not themselves "new property or new improvements" to the unit of property within the meaning of ORS 308.149. As such, the MAV attributable to those improvements would be determined under ORS 308.153(1)(b) and added to the MAV of the unit of property taxpayer acquired from Chevron. *See* ORS 308.153(1) (if new improvements are made as of the January 1 assessment date, MAV is "the sum of" the existing MAV and the RMV of the new improvements (less retirements) times the changed property ratio).[11] Likewise, any new intellectual property or other new intangible property of taxpayer that might have had a situs in Oregon on January 1, 2014, would be "new property," the MAV of which would be determined

---

[10] The department makes a similar error when it states that "the allocated portion of the unit property value *** *is* the property 'sitused' in Oregon" (emphasis added). Instead, the allocated portion of the unit value is assigned to, and becomes the RMV of, the property sitused in Oregon.

[11] The court does not understand the department to argue that ORS 308.162(1) does not apply to the unit of property previously assessed to Chevron simply because taxpayer may have both bought it and made some improvements to it during the same calendar year. Such a reading would severely limit the scope of ORS 308.162 for both centrally and locally assessed property that is subject to an account merger or division or change.

and added to the MAV of the existing unit using the same method.

As to any "operational synergies" arising from the acquisition, it is not clear to the court whether the department refers to additional items of new intangible property, or instead to an increase in the value of the unit of property stemming from taxpayer's ability to use it together with taxpayer's presumably unique assemblage of other property in other states. If the former, the same adjustment for "new property" would be required as discussed above. If the latter, the department again conflates the unit of property with the valuation unit. Any time property changes ownership, new indicators of value may come to light. The buyer may bet that it can use the property more productively; if successful, the purchase reveals value that previously may not have been apparent.[12] That is why a recent purchase is considered one of the most reliable indicators of value, compared to estimates based on projected income generation and other approaches. *See, e.g.*, *Ernst Bros. Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994). The presence or absence of this sort of "synergy" *is* highly relevant when determining the *RMV* of the valuation unit of centrally assessed property under ORS 308.555. However, neither Measure 50 nor its implementing statutes purport to allow redetermination of *MAV* due to a change of ownership.[13] The court sees no basis to depart from the

---

[12] The department acknowledges that it may have undervalued Chevron's Oregon property because it lacked "the benefit of a market sales price in determining previous values."

[13] By contrast, the so-called "Welcome, Stranger!" feature of California's 1978 "Proposition 13" expressly requires the otherwise capped "base" value of property to be redetermined upon a "change of ownership," a feature that has generated extensive rulemaking and litigation regarding exactly what events constitute a change of ownership. *See Pacific Southwest Realty Co. v. County of Los Angeles*, 1 Cal 4th 155, 160-62, 820 P2d 1046 (1991) (discussing Proposition 13, the "change in ownership" provision, and legislative attempts to clarify the provision). The Oregon Supreme Court discussed this feature of California law in an opinion released some four years before the legislature drafted Measure 50 and the implementing statutes. *See Savage v. Munn*, 317 Or 283, 285, 856 P2d 298 (1993) (taxpayer's "complaint was that California had denied her—a new owner—the benefits of the same assessment value that her neighbors—older owners—enjoyed"). The court considers the legislature and the people to have been aware of the possibility of a change-of-ownership rule, and to have chosen by their silence not to have adopted one. *Cf. Flavorland Foods*, 334 Or at 572-73 (voters adopting Measure 50 in May 1997 "were on notice" of court's interpretation of

requirement to preserve the existing MAV of the unit of property under ORS 308.162(1).

Finally, the department asserts, without citation to authority or reference to the factual record:

> "Centrally assessed companies frequently purchase either assets or entire subsidiaries (or entire companies) from each other. These acquisitions are routinely considered as part of the new property 'change in value' from year to year. The MAV of an individual asset is not separately tracked when it becomes the property of another centrally assessed company because the statutes do not require or authorize that either for determining RMV or calculating MAV. Rather, the statutes require that the newly acquired asset will be part of the statewide value of the property of the acquiring company, i.e., part of a new unit of property for that acquiring company."

This case does not involve "tracking" of "individual assets." It involves the moving of an entire "unit of property" from one centrally assessed taxpayer to another. The court holds only that, when a "unit of property" is "changed to another account," the limitation on MAV applies pursuant to ORS 308.162(1). The court observes that individual assets constituting less than the "unit of property" do not have a MAV, and neither Measure 50 nor its implementing statutes provide a mechanism for allocating MAV among individual assets; therefore, the court sees no basis to invoke the limitation in ORS 308.162(1) if only individual assets are transferred. *See* ORS 308.162(1) (referring to MAV "of the property"); *cf. Flavorland Foods*, 334 Or at 578 ("unit of property" refers to "all the property in a property tax account").

## VI.   CONCLUSION

Because the evidence demonstrates that taxpayer acquired the unit of property previously assessed to the account of Chevron, the court applies ORS 308.162(1) and grants taxpayer's motion for case TC 5252 and tax year 2014-15, subject to the requirement to confer with the department's counsel to (1) adjust—if required—the MAV for tax year 2014-15 to account for any "control center

---

"property" because of Oregon Supreme Court's April 1997 discussion of that term in *Schatzer v. Dept. of Rev.*, 325 Or 211, 219, 934 P2d 1119 (1997)).

improvements" in Oregon or other Oregon-situs new property or new improvements on or after January 1, 2013, and before January 1, 2014; and (2) seek agreement on the MAV for each of the Later Years. Now, therefore,

IT IS ORDERED that:

Plaintiff's Motion for Summary Judgment is granted. Subject to any adjustments that may be required for new property or new improvements, the MAV of the Property in Plaintiff's account is $10,786,200; and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is denied.