200            August 12, 2020            No. 11

IN THE OREGON TAX COURT
REGULAR DIVISION

EAN HOLDINGS, LLC,
*Plaintiff*,

*v.*

DEPARTMENT OF REVENUE,
*Defendant*.

(TC 5337)

On cross-motions for summary judgment, Plaintiff (taxpayer), a provider of rental car services and Defendant disagreed as to whether Plaintiff purchased its vehicles "at retail" or "at wholesale." Taxpayer argued that, due to the volume and indiscriminate nature of its vehicle purchases, it should not have been considered a retail buyer. The court, after considering the text, similar statutes, and the legislative history of the Use Tax, concluded that the phrase "vehicles purchased at retail" means vehicles purchased by a purchaser other than for resale. The court determined that the Use Tax applied to taxpayer's purchases.

Oral argument on cross-motions for summary judgment was held on August 13, 2019, in the courtroom of the Oregon Tax Court, Salem.

Eric J. Kodesch, Lane Powell PC, Portland, filed the motion and argued the cause for Plaintiff.

James C. Strong, Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant Department of Revenue.

Decision for Defendant rendered August 12, 2020.

**ROBERT T. MANICKE, Judge.**

## I. INTRODUCTION

Plaintiff (taxpayer) and Defendant (the department) cross-move for summary judgment regarding applicability to taxpayer of the vehicle use tax (Use Tax) imposed by ORS 320.410.[1] The period at issue is the first quarter of 2018. Taxpayer appealed to the Magistrate Division from the department's denial of a refund, and this division hears the appeal by special designation.

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2017 edition unless otherwise indicated.

Taxpayer offers car rental services in Oregon and elsewhere under the trade names "Enterprise Rent-A-Car," "Alamo Rent a Car," and "National Car Rental." Taxpayer buys vehicles for the purpose of renting them to customers for temporary possession, and not for the purpose of transferring title to a customer. Taxpayer is one of a number of subsidiaries of Enterprise Holdings, Inc. (Enterprise Holdings), which negotiates with manufacturers for large numbers of vehicles to be delivered periodically to each subsidiary. Taxpayer and each other subsidiary, however, buy these vehicles from a small number of "central" dealers.[2] The negotiations by Enterprise Holdings, and the purchases by taxpayer and other subsidiaries, are for vehicles of a certain "class" (economy, intermediate, etc.), without regard to make or model. The vehicles are "drop shipped," meaning that the selling dealer causes the manufacturer to ship them directly from the manufacturer's location to the subsidiary's specified locations, including in this case taxpayer's locations in Oregon. All central dealers are outside Oregon. In the quarter at issue, taxpayer acquired 2,717 vehicles at its Oregon locations, out of approximately 250,000 that taxpayer and the other subsidiaries of Enterprise Holdings acquired nationwide.

The tax at issue is relatively new. The 2017 legislature adopted a wide-ranging transportation bill comprising nearly 100 pages. *See* Or Laws 2017, ch 750, §§ 89 - 111 (HB 2017). Some seven pages contain a set of new taxes on transactions involving certain motor vehicles (and certain bicycles), codified primarily at ORS 320.400 to 320.490. ORS 320.405(1) imposes a tax "on each vehicle dealer for the privilege of engaging in the business of selling taxable motor vehicles at retail in this state" (the "Privilege Tax"). The tax rate is 0.5 percent of a taxable vehicle's "retail sales price," and the vehicle dealer may collect the privilege tax from the purchaser. ORS 320.405(2) - (3).

ORS 320.410 imposes the Use Tax at the same rate and upon the same tax base (the "retail sales price"), stating in subsection (1):

---

[2] Taxpayer explains that state franchise law prohibits manufacturers from selling vehicles directly to taxpayer. *See* ORS 650.130(12).

> "A use tax is imposed on the storage, use or other consumption in this state of taxable motor vehicles purchased *at retail* from any seller."

ORS 320.410(1) (emphasis added). Subsection (4) provides:

> "The use tax shall be reduced, but not below zero, by the amount of any privilege, excise, sales or use tax imposed by any jurisdiction on the sale, or on the storage, use or other consumption, of the taxable motor vehicle. The reduction under this subsection shall be made only upon a showing by the purchaser that a privilege, excise, sales or use tax has been paid."

ORS 320.410(4) reduces the Use Tax by the amount of any Oregon Privilege Tax (or any listed tax of another jurisdiction) that the seller pays on the same sale of the same vehicle. The Use Tax thus complements the Privilege Tax, ensuring that the "privilege tax can be imposed on in-state vehicle dealers without placing them at a competitive disadvantage to out-of-state vehicle dealers * * *." *AAA Oregon/Idaho Auto Source v. Dept. of Rev.*, 363 Or 411, 425, 423 P3d 71 (2018). In many circumstances, the seller is responsible for collecting and remitting the Use Tax. *See* ORS 320.420(1); ORS 320.445. However, if the seller does not collect the Use Tax from a purchaser, the purchaser must report and remit the Use Tax to the department. ORS 320.455. In this case, taxpayer was the purchaser, and neither party asserts that any of the central dealers, or any other person, collected or paid any amount of tax on the transactions at issue.

## II.   ISSUE

The sole issue is whether the Use Tax applies to taxpayer's purchases.

## III.   ANALYSIS

Taxpayer's sole argument is that the Use Tax does not apply because taxpayer did not purchase its vehicles "at retail," as required by ORS 320.410(1). Because the meaning of that statutory phrase is at issue, the court applies the analytical steps in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), starting with the text and context of the statute, proceeding to the legislative history to the extent useful, and consulting general maxims of statutory

construction to the extent the legislature's intent remains unclear.

A.  *Text*

The legislature has not defined "at retail" or "retail" in ORS 320.400 to 320.490. Applying the Oregon Supreme Court's approach, this court will first examine the "plain meaning" of the term, on the assumption that the legislature intended a term left undefined to have its meaning in ordinary use. The court will next determine whether the term has a specialized, or "technical" meaning, which may be a specialized "legal" meaning or a specialized meaning from some other field. If the court discovers a technical meaning that differs from the plain meaning, the court will examine usage in context to determine whether the legislature intended to use the term in that different, technical sense. *See DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) (examining competing plain and technical legal meanings of phrase "receives * * * notice"); *State v. McNally*, 361 Or 314, 321-22, 392 P3d 721 (2017) (examining plain and technical legal meanings of "passive resistance"; finding same meaning in both contexts); *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (rejecting reliance on plain meaning of "data transmission services"; looking to contemporaneous publications and other examples of usage in telecommunications field to arrive at technical meaning).

Starting with the plain meaning, both parties cite the same dictionary, each relying on different portions. Taxpayer cites the definition of "retail":[3]

"the sale of commodities or goods in small quantities to ultimate consumers — opposed to *wholesale*

"—at retail *adverb*

": at a price customarily asked by a retailer : RETAIL

"<sold *at retail*>"

---

[3] Taxpayer cites the definition of "retail" as a noun, while the department emphasizes the adverbial phrase "at retail." The court finds no material difference based on usage of "retail," derivative forms such as "retailer," or the usage as a particular part of speech.

*Webster's Third New Int'l Dictionary* at 1938 (unabridged ed 2002) (italics in original). Taxpayer also cites the definition of "wholesale," referred to above:

> "1 : the sale of goods or commodities in quantity usually for resale (as by a retail merchant)
>
> "2 : a large scale or indiscriminate transaction or maneuver—used especially in the phrase *by wholesale*"

*Id.* at 2611 (italics in original). Taxpayer emphasizes the references in both definitions to the quantity of goods sold: "small quantities" are associated with "retail," while wholesale sales are "in quantity usually for resale." Taxpayer argues that these references support its position because taxpayer buys vehicles in quantities that clearly are large (2,717 vehicles in a single calendar quarter). Furthermore, there are good grounds for taxpayer's assertion that it buys vehicles "indiscriminately," as it selects them by vehicle class rather than with a focus on specific preferences such as color, or even the precise model.

The department, on the other hand, points out that the phrase "at retail" is defined by reference to a price customarily asked by a "retailer." *Webster's* defines "retailer" as:

> "a merchant middleman who sells goods mainly to ultimate consumers[.]"

*Id.* at 1938. The department, therefore, asks the court to focus not on the quantity of items but on whether taxpayer is the "ultimate consumer" of the vehicles. Because taxpayer buys the vehicles with no intention of reselling them, the department argues that taxpayer buys its vehicles "at retail." The department cites sales and use tax statutes from other states as context, asserting that those statutes, and cases interpreting them, confirm that taxpayer overemphasizes the references to quantity in *Webster's*.

The court concludes that the plain meaning of a purchase "at retail" could refer either to a purchase of a small number of vehicles or to a purchase of any number of vehicles if the purchaser buys them for the purpose of consumption and not for resale.

The court now tests whether technical definitions of "at retail" exist, and whether those differ from the definitions the parties cite. The court turns first to a legal dictionary to determine whether it defines the term. *See Norden v. Water Resources Dept.*, 329 Or 641, 645-47, 996 P2d 958 (2000) ("Words that have a well-defined legal meaning are given that meaning.") (looking to *Black's Law Dictionary* for legal meaning of "finding of fact"); *see also, e.g.*, *Dept. of Rev. v. Croslin*, 345 Or 620, 628, 201 P3d 900 (2009) (looking to *Black's Law Dictionary* for meaning of "damages"). In this case, *Black's Law Dictionary* (*Black's*) defines "retail"[4] as follows:

> "The sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing. Cf. <u>WHOLESALE</u>. — **retail,** *adj.* — **retail,** *vb.*"

*Black's* at 1509 (10th ed 2014) (underscoring and boldface in original). And *Black's* defines the noun "wholesale" as:

> "The sale of goods or commodities usu. to a retailer for resale, and not to the ultimate consumer."

*Id*. at 1832.[5] The terms "retail" and "wholesale" thus have established legal meanings, each of which supports the department's interpretation, referring exclusively to whether the transaction is a sale to an "ultimate consumer," as opposed to a sale "for resale" or "for further distribution or processing," and with no mention of the quantity of goods sold.

The court briefly considers whether "retail" has a widely accepted technical definition other than its general legal definition. *See Comcast*, 356 Or at 296-315 (court potentially considers use of terms in specialized disciplines, trades, professions, industries, looking to technical and industry dictionaries, articles and other publications). Although it may be possible to identify discrete "fields" in which the term is used, such as the vehicle industry, neither party has provided any such information to the court.

---

[4] *Black's* contains no separate definition of "at retail" or "at wholesale."

[5] The court notes that the definitions of both terms in the most recent edition of *Black's* are identical to those in the 2014 edition, which would have been available to the 2017 legislature. *See Black's* at 1573, 1914 (11th ed 2019).

Assuming "taxation" were recognized as its own field for this purpose, the court is not aware of any dictionary or glossary widely recognized as authoritative.[6]

The court proceeds to analyze the context of the legislature's use of "retail," as well as any legislative history, to determine whether the legislature intended (a) the quantity-based plain meaning for which taxpayer contends; (b) the consumption-not-resale-based meaning for which the department contends, which is based on the alternate plain meaning and overlaps with the technical legal meaning; or (c) another meaning that might emerge. *See DCBS v. Muliro*, 359 Or at 745-46.

B.   *Context*

The court looks first for any relevant context within the remaining provisions that impose the Privilege Tax and the Use Tax, ORS 320.400 to 320.490. Nothing in those provisions refers to large or small numbers of vehicles. On the other hand, a provision exempting a seller from both the Privilege Tax and the Use Tax states:[7]

> "Notwithstanding ORS 320.405 to 320.420, a *resale* certificate taken from a *purchaser ordinarily engaged in the business of selling taxable vehicles* relieves the seller from the obligation to collect and remit transportation project taxes. A resale certificate must be substantially in the form prescribed by the Department of Revenue by rule."

ORS 320.425(3) (emphases added). The requirements that the purchaser deliver a resale certificate and be "ordinarily engaged in the business of selling" vehicles in order for the exemption to apply appear to exempt the same transactions that are excluded under the technical legal definitions of "retail" and "wholesale," as well as the alternate plain meaning on which the department relies. The department argues

---

[6] The parties cite Jerome R. Hellerstein and Walter Hellerstein, *State Taxation* (3rd ed 2016), a leading treatise on state taxation, to which the court also refers below. Neither party cites the treatise as a source of definitions, and the court views the treatise as seeking to explain the state of the law, as opposed to defining terms.

[7] The court here uses the term "exempt" as shorthand, to denote that ORS 320.425(3) purports to eliminate the duty to collect and remit Use Tax "[n]otwithstanding" the remaining provisions of the Privilege and Use Tax law. ORS 320.425(3) nowhere uses the term "exempt."

that this consistency proves its point, while taxpayer argues that the overlap proves that the legislature could not have intended a narrow definition of "retail." In other words, taxpayer argues that the legislature would not have needed to add an exemption for sales for resale if the definition of a taxable "retail" transaction already excluded a sale for resale.

Testing taxpayer's argument, the court finds in the Privilege and Use Tax statutes one additional instance in which the legislature appears to have addressed a single point in multiple provisions. ORS 320.425(2) provides:

> "Notwithstanding ORS 320.405, a seller is not liable for the privilege tax with respect to an otherwise taxable motor vehicle that is sold at an event that lasts less than seven consecutive days, for which the public is charged admission and at which otherwise taxable motor vehicles are sold at auction."

The exemption applies to a "seller," a term defined to mean a "vehicle dealer." *See* ORS 320.400(4)(a) (defining "seller" for purposes of Privilege and Use Taxes as a "vehicle dealer"). However, this exemption appears to be fully replicated in an exclusion from the definition of "vehicle dealer" in ORS 320.400(9)(b), which states:

> "Notwithstanding [the definition of "vehicle dealer" in] paragraph (a) of this subsection, a person is not a vehicle dealer for purposes of ORS 320.400 to 320.490 and 803.203 to the extent the person:
>
> "(A)  Conducts an event that lasts less than seven consecutive days, for which the public is charged admission and at which otherwise taxable motor vehicles are sold at auction; or
>
> "(B)  Sells an otherwise taxable motor vehicle at auction at an event described in this paragraph."

Therefore, the exemption in ORS 320.425(2) appears to apply to transactions at short-term, admission-only auction events already excluded under the definition in ORS 320.400(9). This context cautions against accepting taxpayer's argument that the legislature could not have intended to repeat itself by covering the same ground in two separate provisions.

The court finds it more plausible that the legislature intended the resale exemption in ORS 320.425(3), with its specific requirement of a resale certificate, to serve as a mechanism to implement the narrower of the two competing definitions of "retail." Under this view, a purchase or sale "at retail" is any purchase or sale not for resale, and a seller uses the resale certificate to prove that the sale is not "at retail," keeping that proof on file for the department to inspect. *See* ORS 320.460(1) (five-year record retention requirement). By this same mechanism, the seller also forestalls the statutory presumption that a vehicle found to have been delivered in Oregon was sold for "storage, use or other consumption" in Oregon. *See* ORS 320.420(3)(b)(B).[8] The presumption exists to "ensure the proper administration of [the Use Tax] and to prevent evasion ＊＊＊." ORS 320.420(3).

The court contrasts this tentative view—a definition of "retail" that excludes all sales for resale, seamlessly coupled with an exemption statute that requires a paper trail of all resale transactions for the department to check on audit—with taxpayer's position at oral argument. There, taxpayer argued that the legislature intended to leave undefined both (1) the absolute number of vehicles that a purchaser would have to buy to achieve tax-free wholesale status; and (2) the time period over which those sales would have to occur.[9] Taxpayer asserted that the legislature intended that the department adopt rules to define these terms, but taxpayer acknowledged that the legislature nowhere said so expressly. *See* ORS 320.480(2) (department "may" adopt rules "that the department considers necessary or appropriate" to implement, administer and enforce Privilege and Use Taxes). From the context supplied by ORS 320.425(3) and ORS 320.420(3), the court concludes that a legislature concerned with "proper administration" of the Privilege and Use Taxes is unlikely to have left these critical numbers and time periods to interpretation by either the department or this court.

---

[8] The resale certificate is similar to the proof a seller collects and retains when it sells a vehicle for storage, use or other consumption outside Oregon. *See* ORS 320.420(3)(c). Both documents identify the purchaser and thus enable the department to seek further verification that the purchaser actually resold the vehicle or exported it for use outside the state.

[9] *E.g.*, six sales per day, 50 sales per month, 25 sales per quarter, etc.

Taxpayer points to Oregon alcoholic beverage license law as a source of relevant context, as that law too uses the terms "retail" and "wholesale" without defining them. Taxpayer's argument is based on ORS 471.175(1) and (7) and ORS 471.178(1) and (3), which allow holders of a "full on-premises sales license" or a "limited on-premises sales license," respectively, to sell "by the drink at retail" on the premises and "not more than two gallons" for off-site consumption. Taxpayer contrasts these provisions with ORS 471.235(1), which allows the holder of a "wholesale malt beverage and wine license" to sell "in quantities of not less than four gallons" to consumers for consumption not on the licensed premises or to certain unlicensed organizations. Taxpayer argues that these provisions show that it is quantity that differentiates between "retail" and "wholesale" when the legislature has not defined those terms. This argument, however, ignores the fact that each of these statutes also is fully consistent with a meaning of "retail" as "not for resale." Each states that "all alcoholic beverages sold under [the respective type of on-premises license] must be consumed on the licensed premises." ORS 471.175(1); ORS 471.178(1). Meanwhile, a wholesale wine and malt beverage licensee "may not sell any alcoholic liquor for consumption upon the licensed premises." ORS 471.235(1). As to malt beverages, the statute expressly states: "A wholesale malt beverage and wine license shall permit the licensee also to sell malt beverages *at wholesale only, to persons holding licenses authorizing the persons to resell such beverages at retail.*" *Id.* (emphasis added). Far from persuading the court that the legislature generally intends "retail" and "wholesale" to refer to small and large quantities of goods sold, these statutes indicate that the legislature intended "retail" to mean a sale to a consumer and "wholesale" to mean a sale for resale.

Taxpayer also cites cannabis sales tax provisions that differentiate between a "marijuana retailer" and a "marijuana wholesaler." The definitions themselves are fully consistent with the department's position in this case. *See* ORS 475B.015(23) ("'Marijuana retailer' means a person that sells marijuana items to a consumer in this state."); ORS 475B.015(25) ("'Marijuana wholesaler' means a person that purchases marijuana items in this state for resale to a

person other than a consumer.") Taxpayer, relying solely on the primary *Webster's* definition, argues that the cannabis tax provisions show that the legislature found it necessary to craft express definitions in order to "deviate from the *Webster's* distinction" based on small vs. large quantities of goods sold. The court observes, however, that the legislature has enacted express definitions consistent with the department's position in the tobacco tax statutes as well. *See* ORS 323.010(17) (cigarette tax) (defining "wholesaler" as "any dealer who engages in the sale of cigarettes to any other dealer for purposes other than use or consumption"); ORS 323.500(11) (other tobacco products tax) (defining "retail dealer" as "any person who is engaged in the business of selling or otherwise dispensing tobacco products to consumers"); *see also* ORS 323.085(2) (stating legislative intention to impose cigarette taxes on the "retail consumer"). In addition, as discussed at oral argument, the corporate activity tax, also enacted in 2017, defines "retailer" in a manner consistent with the department's position, excluding a person who sells for resale.[10] In short, there are multiple examples of the legislature expressly distinguishing for excise tax purposes between a sale for consumption or use and a sale for resale.

By contrast, taxpayer cites only one example in which the legislature seems to have defined a relevant term ("nonretail") solely in terms of quantity of goods sold and not also by whether the transaction is a sale for resale. The example is a nontax statute, ORS 480.345, which allows certain persons to pump their own gasoline or certain other fuels. The statute refers to those persons as "nonretail customers," which generally include certain purchasers of "at least 900 gallons" of the specified fuel "during a 12-month period," but also include 14 listed categories of persons

---

[10] The corporate activity tax definition also excludes two variants of a sale for resale: the sale for use as an ingredient in real or personal property or for incorporation into a new article of tangible personal property. *See* ORS 317A.100(15) ("'Retailer' means a person doing business by selling tangible personal property to a purchaser for a purpose other than: (a) Resale by the purchaser of the property as tangible personal property in the regular course of business; (b) Incorporation by the purchaser of the property in the course of regular business as an ingredient or component of real or personal property; or (c) Consumption by the purchaser of the property in the production for sale of a new article of tangible personal property.").

who qualify without having to make such minimum purchases, including farmers, government emergency service providers, and certain other local government entities. ORS 480.345(2). The court finds it significant that the legislature took pains to define the quantity, within a specified time, that constituted "nonretail" purchases. Overall, the court concludes from the context supplied by the four other excise tax statutes that the legislature regularly treats "retail" transactions as the opposite of transactions "for resale." And taxpayer's reference to the gas pumping statute reinforces the court's conclusion that when the legislature uses "retail" in the quantity-based sense, it specifies the quantity, and the time period over which that quantity must be reached, so as to avoid ambiguity. The court concludes that the statutory context supports the view that the legislature intended "at retail" to refer to a sale other than a sale for resale.

Taxpayer also asserts that, even under a definition of "at retail" that disregards the quantity of goods sold, taxpayer is not the "ultimate consumer" of the vehicles it purchased.[11] Taxpayer does not seriously contend that it is not a "consumer" of the vehicles, a term that it acknowledges means one who "utilizes" or "uses" something. (Quoting *Webster's* definition of "consume" as to "utilize (an economic good) in satisfaction of wants or the process of production." (Internal quotations omitted.)).[12] Rather, taxpayer contends that it is not the "ultimate" consumer because it buys the vehicles for the purpose of allowing others to use them. However, the legislature did not use the word "ultimate"; that word appears only in the dictionary definitions. In the same sentence as the phrase "at retail," the legislature used the words "consumption" and "use" *without* the modifier "ultimate." *See* ORS 320.410(1). The court has concluded above that the legislature's intent in using the term "at retail" was to distinguish purchases "for resale." The court sees no need to determine the "ultimate" user or consumer of the vehicles, as among taxpayer as licensor to customers,

---

[11] The department, too, states its version of the test in terms of sales to the "ultimate consumer."

[12] Although neither party cited a legal definition, the court finds that the established legal definitions of "consume," "consumption," and "consumption tax" do not materially differ from the definitions in *Webster's* on which taxpayer relies. *See Black's* at 382, 384, 1685 (10th ed); 395, 396, 1759 (11th ed).

the rental customers as drivers, the secondary purchasers once taxpayer decides to replace them, or the steel recycler at the end of their life.[13] It is sufficient that taxpayer uses the vehicles and does not buy them for resale in the ordinary course of its business. (Taxpayer "does not acquire vehicles for the purpose of engaging in transactions in which it transfers title to the vehicles to a customer.") The parties' focus on the "ultimate" consumer adds no relevant context and does not change the court's conclusion that taxpayer's purchases were at retail because they were not for resale.

## C.  *Legislative History*

Neither party relies extensively on legislative history. Taxpayer cites a 2017 revenue impact report on HB 2017, pointing out that the amount of anticipated revenue stated in that report ($1.8 million for 2017-19 biennium) later proved far less than the actual revenues received ($4.45 million actual collections as of August 31, 2018). Those numbers alone are simply insufficient to help the court. Taxpayer points to no testimony, committee dialogue, or other narrative that would trace the difference in collections to a legislative intention to not impose the Privilege or Use Taxes on fleet purchases by car rental companies, as opposed to a forecasting error or events occurring after the bill passed.

## IV.  CONCLUSION

Based on the text and context, the court concludes that the legislature intended the phrase "vehicles purchased at retail" to mean vehicles purchased by a purchaser other than for resale. Taxpayer does not argue that its purchases were for resale. Accordingly, the Use Tax applies to taxpayer's purchases for the taxable quarter at issue. Now, therefore,

---

[13] For a discussion of line-drawing problems in the imposition of sales and use taxes within the chain of consumption, *see* Hellerstein & Hellerstein ¶ 12.01 ("[A] theoretically ideal retail sales tax would exclude business inputs from the tax base. In fact, however, the American sales tax deviates substantially from this norm: Roughly 40 percent of state sales tax revenues are attributable to business purchases."); ¶ 12.04 ("Despite the theory that a retail sales tax should apply only to final sales for household consumption, in practice the sales tax is not confined to transfers to the ultimate consumer of the final product produced in the economic process.").

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied; and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is granted.