454 May 18, 2021 No. 19

IN THE OREGON TAX COURT
REGULAR DIVISION

TESORO LOGISTICS
NORTHWEST PIPELINE LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5252 (Control); TC 5771;
TC 5292; TC 5313; TC 5350; TC 5395)

On Defendant Department of Revenue's (department's) motion for reconsideration, the department argued that, under ORS 308.142(1)(b), any increase in the Oregon-allocated value of the worldwide valuation unit constituted "new property" that should have been included in the maximum assessed value of the property at issue; the word "value" in the statute is equivalent to the word "property." Plaintiff, in response, asserted that only the addition of property with an Oregon situs constituted "property" or "new property" for Measure 50 purposes. After considering, the text, context, and limited legislative history of ORS 308.142(1)(b), the court concluded that the unit of property for Measure 50 purposes consists only of the property—real property, tangible personal property, or intangible property—sitused in Oregon. Plaintiff did not add any Oregon-sitused new property or new improvements as of the tax year at issue; therefore as concluded in the original decision, ORS 308.162(1) precluded revaluation of the MAV.

Oral argument on Defendant's Motion for Reconsideration was held remotely on May 12, 2021.

Cynthia M. Fraser, Foster Garvey PC, Portland, filed the response and argued the cause for Plaintiff.

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant.

Decision rendered May 18, 2021.

**ROBERT T. MANICKE, Judge.**

Defendant Department of Revenue (the department) has filed a Motion for Reconsideration asking the court to reconsider or clarify its Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross-Motion for Summary Judgment dated February 19, 2021. *Tesoro Logistics Northwest Pipeline, LLC I v. Dept.*

*of Rev.*, 24 OTR 439 (2021). Plaintiff (taxpayer) resists the department's Motion for Reconsideration and asks the court to make a factual finding that no adjustments are required to the MAV for tax year 2014-15 as determined in the court's order.[1]

The order determines that "[s]ubject to any adjustments that may be required for new property or new improvements, the MAV of the Property in Plaintiff's account [for tax year 2014-15] is $10,786,200." *Tesoro I*, 24 OTR at 453. The department asserts that, as adjusted under the order, the MAV is $45,839,200.[2] Taxpayer asserts that no adjustments are required and that the MAV, therefore, is $10,786,200.

The department's motion, and particularly its reply brief, brings into sharper focus the department's reliance on its interpretation of ORS 308.142(1)(b):[3]

"For purposes of determining whether the assessed value of property exceeds the property's maximum assessed value permitted under section 11, Article XI of the Oregon Constitution:

"(1)   'Property' means:

"(a)   All property included within a single property tax account; or

"(b)   In the case of property that is centrally assessed under ORS 308.505 to 308.665, the total statewide *value* of all property assessed to a company or utility that is subject to ORS 308.505 to 308.665."

(Emphasis added.) The department asserts that, when applying the order, this definition causes any increase in the Oregon-allocated value of the worldwide *valuation unit*, compared to the RMV assigned to Chevron's account for tax year 2013-14, to be "new property" that must be added to the Property's MAV. The department argues that this allocated share of value was never part of Chevron's account for tax

---

[1] This order uses abbreviations and other defined terms in the court's order of February 19, 2021, *Tesoro I*, 24 OTR 439 (2021).

[2] As noted below, this is an increase compared to the MAV the department sought on summary judgment: $38,723,000.

[3] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2013.

year 2013-14 and thus was not carried over ("changed") to taxpayer's account under ORS 308.162(1). Therefore, according to the department, even if ORS 308.162(1) had the "clear practical effect"[4] of preserving the 2013-14 MAV because taxpayer acquired the entire centrally assessed "unit of property" from Chevron, the fact that the Oregon share of taxpayer's valuation unit was worth more than the Oregon share of Chevron's valuation unit in the prior year required the department to add *additional* new property to the MAV, over and above the 2013-14 MAV applied to Chevron's account.

The department's argument on summary judgment was based on this same interpretation of the definition of "property" under ORS 308.142(1)(b). *Tesoro I*, 24 OTR at 449. However, the department reads the order as now requiring the amount of the MAV increase to be recalculated in a manner that raises the total MAV of the Property from $38,723,000, as the department originally sought, to $45,839,200.[5] The department also continues to maintain its original position "that a new account was created for Tesoro's property [and that] this property value had no prior MAV." Therefore, the court reads the department's Motion for Reconsideration as seeking one of two alternatives: either a complete correction of the order that sets the Property's MAV at $38,723,000 based on the department's original legal theory and computation, or a clarification that the MAV is $45,839,200 based on the department's understanding and application of the

---

[4] *DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 285 n 32, 434 P3d 379 (2019).

[5] The department's original calculation treated the entire Property in taxpayer's account for tax year 2014-15 as "new property," rejecting the notion that ORS 308.162(1) required that the 2013-14 MAV be carried over to taxpayer's account. Because the parties stipulated that the Property had a 2014-15 RMV of $38,723,000, and the changed property ratio under ORS 308.153(1)(b) was 1.0, the department originally assigned the Property a 2014-15 MAV of $38,723,000 ($38,723,000 x 1.0 = $38,723,000).

On reconsideration, the department reads the court's order as requiring taxpayer to (1) carry over the MAV assigned to Chevron for tax year 2013-14 ($10,786,200) and (2) add to that MAV a "new property" value consisting of (a) the Property's RMV for tax year 2014-15 ($38,723,000), less (b) the amount shown as the RMV in Chevron's account for tax year 2013-14 ($3,670,000) multiplied by the changed property ration of 1.0. The department thus asserts that the Property's 2014-15 MAV is $45,839,200 ($10,786,200 + (($38,723,000 - $3,670,000) x 1.0)). *Id*.

order. Both alternatives rely on the department's interpretation of ORS 308.142(1)(b).

Taxpayer contests the department's premise, asserting that only the addition of property with a situs in Oregon could constitute "property" or "new property" for Measure 50 purposes. With its response on reconsideration, taxpayer submitted a declaration, which the department has not contested, alleging that the only property with a situs in Oregon are lines of pipe that were included in Chevron's account for tax year 2013-14, and that the "control center improvements" that taxpayer made after the acquisition and before the January 1, 2014, assessment date were improvements to property in Utah.[6] Because taxpayer added no property with a situs in Oregon, taxpayer argues that there is no basis to change the MAV carried over from Chevron's account. For the reasons discussed below, the court agrees with taxpayer.

The court believes that a focused analysis of ORS 308.142(1)(b), applying the framework in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (courts to interpret statutes based on text, context, and legislative history, with potential resort to general maxims), will address the department's argument on reconsideration and clarify the court's order. The court will grant the department's motion and will modify and adhere to its February 19, 2021 order, as shown at the end of this order.

---

[6] These facts provided by taxpayer's declaration on reconsideration fully resolve the only factual issue left open in the court's order regarding tax year 2014-15. The department mentions two other facts in its reply brief on reconsideration, but the department has not asserted in briefing or in oral argument that any genuine issue of material fact remains. First, the department describes differences in the ways Chevron and taxpayer expressed the computations required in their respective annual statements, but those computations have to do with value. Nothing in the department's discussion alleges that taxpayer added lines of pipe or other real property or personal property (tangible or intangible) sitused in Oregon. Nor does the department allege that either company reported incorrectly. At oral argument, the department's counsel stated that the department "has no reason to believe" that Chevron did not report its Oregon system value as "they believed it was." Second, the department's Motion for Reconsideration asserts that taxpayer failed to provide documents showing how taxpayer allocated its purchase price among the items it acquired from Chevron. However, taxpayer's declaration on reconsideration identifies where in the public record the purchase price allocation is located, and the department's reply does not contest that the allocation information is available to it. The court finds that there is no dispute of material fact.

In its reply on reconsideration, discussing ORS 308.142(1)(b), the department emphasizes the word "value": "The 'property' assessed in Oregon is an allocated percentage of the system *value*[;]" "[t]he Oregon property is the Oregon allocated *value*" (emphases added). In essence, the department argues that the dollar amount of value that results from allocating a portion of the value of the worldwide valuation unit to Oregon under ORS 308.550 *is* the "unit of property" that has a MAV under the opening sentence of Measure 50. *See* Or Const, Art XI, § 11(1)(a) ("[E]ach unit of property in this state shall have a maximum assessed value * * *.").

Starting with the statutory text, the court looks to contemporaneous dictionary definitions to find the plain meanings of the relevant terms in ORS 308.142(1)(b): "value," "property," and "means." *See OR-OSHA v. CBI Services*, 356 Or 577, 589, 341 P3d 701 (2014) (courts "assume that the legislature intended words of common usage to be given their ordinary meanings"; referring to dictionaries to discover plain meaning). *Webster's* defines "value" in relevant part as follows:

> "**1 a :** the amount of a commodity, service, or medium of exchange that is the equivalent of something else **:** a fair return in goods, services, or money <the method of merchandising is to give the buyer good [value] at the right price –*Wall Street Jour.*> * * * **b :** VALUABLE CONSIDERATION <for [value] received> <a holder or purchaser for [value] **2 :** the monetary worth of something **:** marketable price usu. In terms of a medium of exchange <his holdings increase in [value]>[.]"

*Webster's Third New Int'l Dictionary* 2530 (unabridged ed 1993) (italics and boldface in original). The definition that the court finds most closely on point states that "value" is the "amount of a * * * medium of exchange that is the equivalent of *something else*." *Id.* (emphasis added). By this definition, value cannot *be* property, because property is "something else." Rather, "value" is an amount in dollars (the "medium") that can be "exchange[d]" for property.

The plain meaning of "property," on the other hand, is, in relevant part:

"**2 a :** something that is or may be owned or possessed **:** WEALTH, GOODS; *specif* **:** a piece of real estate <the house . . . surrounded by the [property] –G.G. Weigend> **b :** the exclusive right to possess, enjoy, and dispose of a thing **:** a valuable right or interest primarily a source or element of wealth **:** OWNERSHIP * * * **c :** something to which a person has a legal title **:** an estate in tangible assets (as lands, goods, money) or intangible rights (as copyrights, patents) in which or to which a person has a right protected by law[.]"

*Id.* at 1818 (italics and boldface in original). As "something that is or may be owned or possessed," or something in which a person may have "a valuable right or interest," property is indeed "something else" that may be associated with a value in money but is not identical to its value in money. The court concludes that the terms "value" and "property" are fundamentally different.

The court therefore examines the term "means" to ascertain the degree of relationship that the legislature could have intended when it wrote that "'[p]roperty' means * * * the total statewide value of all property" assessed to a centrally assessed company. *Webster's* defines the verb "mean" as:

"**1 :** to have in the mind esp. as a purpose or intention **:** PURPOSE, DESIGN, INTEND <houses are *meant* for use> <[*mean*]s to make it difficult for you> <*meant* to come home early> **2 :** to serve or intend to convey, show, or indicate **:** SIGNIFY, DENOTE, EXPRESS <what do you [mean] by such conduct> <those words [mean] nothing to me> **3 :** to have significance or importance to the extent or degree of **:** count for <health [*mean*]s everything> <a happy home [*mean*]s much to a child> <music [*mean*]s little to me> <success without recognition [*mean*]s nothing to him> <her happiness *meant* the world to him>[.]"

*Id.* at 1398 (italics and boldface in original). The court is struck by the absence of a definition that forces the reader to *equate* "value" with "property," as the department suggests. By using the transitive verb "means," the legislature intended the term "property" to "convey, show or indicate" something. These terms may, but do not necessarily always, imply a complete overlap between the subject (property) and the object (value of property).

Based on these definitions, the court concludes that the legislature may have intended ORS 308.142(1)(b) as

something other than a direction to mechanically substitute the word "value" each time the word "property" appears in the Measure 50 statutes.[7]

The court proceeds to statutory context. Within the same 1997 law implementing Measure 50, the legislature adopted not only ORS 308.142(2)(b), but also a second definition of "property" that was codified as an amendment to one of the central assessment statutes. The court reprints both:

---

[7] The contemporaneous technical definitions are not materially different. *See EAN Holdings, LLC v. Dept. of Rev.*, 24 OTR 200, 203 (2020) ("If the court discovers a technical meaning that differs from the plain meaning, the court will examine usage in context to determine whether the legislature intended to use the term in that different, technical sense." (citing *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016))). Although *Black's* has multiple entries for different types of value and property, the technical definitions of the general terms "value" and "property" are substantially the same as their plain meanings:

"**Value.** The utility of an object in satisfying, directly or indirectly, the needs or desires of human beings, called by economists 'value in use,' or its worth consisting in the power of purchasing other objects, called 'value in exchange.' \*\*\* *Also the estimated or appraised worth of any object or property, calculated in money.* To estimate the worth of; to rate at a certain price; to appraise; or to place a certain estimate of worth on in a scale of values."

*Black's Law Dictionary* 1551 (6th ed 1990) (emphasis added).

"**Property.** That which is peculiar or proper to any person; that which belongs exclusively to one. In the strict legal sense, an aggregate of rights which are guaranteed and protected by the government. \*\*\* The term is said to extend to every species of valuable right and interest. More specifically, ownership; the unrestricted and exclusive right to a thing; the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude every one else from interfering with it. That dominion or indefinite right of use or disposition which one may lawfully exercise over particular things or subjects. The exclusive right of possessing, enjoying, and disposing of a thing. The highest right a man can have to anything; being used to refer to that right which one has to lands or tenements, goods or chattels, which no way depends on another man's courtesy.

"The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; *everything that has an exchangeable value or which goes to make up wealth or estate.* It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments, and includes every invasion of one's property rights by actionable wrong. \*\*\*

"Property embraces everything which is or may be the subject of ownership, whether a legal ownership, or whether beneficial, or a private ownership."

*Id.* at 1216 (emphasis added). *Black's* does not have an entry for the verb form of "mean."

| ORS 308.142(1), Oregon Laws 1997, chapter 541, section 7 | ORS 308.510(5), Oregon Laws 1997, chapter 541, section 203 |
|---|---|
| For purposes of determining whether the assessed value of property exceeds the property's maximum assessed value permitted under section 11, Article XI of the Oregon Constitution: <br><br> (1) "Property" means: <br><br> (a) All property included within a single property tax account; or <br><br> (b) In the case of property that is centrally assessed under ORS 308.505 to 308.665, the total statewide value of all property assessed to a company or utility that is subject to ORS 308.505 to 308.665. | For purposes of determining the maximum assessed value of property under section 11, Article XI of the Oregon Constitution, "property" means all property assessed to each company that is subject to assessment under ORS 308.505 to 308.665. |

This second definition, in ORS 308.510(5), is virtually identical to the definition in ORS 308.142(1)(b), except that ORS 308.510(5) cannot be read to define "property" as "value." It does not mention value, except within the phrase "maximum assessed value." The 1997 legislature added the definition in ORS 308.510(5) at the end of the statute that generally defined "property," real and personal property, and the "use" of property, for purposes of central assessment. *See* Or Laws, ch 541, § 203 (amending ORS 305.510).[8] The placement of ORS 308.510(5) suggests that its function is to alert or remind the reader that the Measure 50 statutes, codified apart from the central assessment statutes, add an overlying regime that limits the growth of property values and requires its own special-purpose definition for the determination of MAV. The court sees no indication in the text that the legislature intended ORS 308.510(5) and

---

[8] In 2009 the legislature, among other changes, moved the general definition of "property" for central assessment purposes from ORS 308.510(1) to ORS 308.505, which contains other general definitions. Or Laws 2009, ch 128, § 3.

ORS 308.142(1)(b) to have meanings differing from each other; rather, ORS 308.510(5) is a signpost pointing to the Measure 50 statutes and restating the definition of property there.

Based on that understanding, the court concludes that the lack of any reference to "value" in ORS 308.510(5) undermines the department's argument. Rather than read ORS 308.142(1)(b) as redefining property as something else, the court believes the more plausible interpretation is to read ORS 308.142(1)(b) and ORS 308.510(5) together as performing two functions. First, these provisions define the assessable and taxable unit of property for Measure 50 purposes as "all" property assessed to a business listed in ORS 308.515, as opposed to treating component parts as separate units of property, such as land, or improvements, or tangible personal property, or intangible property. The word "total" in ORS 308.142(1)(b) emphasizes this point. Second, by referring to property "assessed to" a listed business, both provisions limit the unit of property to property in Oregon. Although the property tax statutes nowhere define the term "assess,"[9] the statutes make clear that the department has no power to "assess" property not sitused in Oregon. ORS 308.515(1) ("The Department of Revenue shall make an annual assessment of any property *that has a situs in this state* \* \* \*." (Emphasis added.)). ORS 308.142(1)(b) emphasizes that point by referring to the "statewide" value of property.

This reading of paragraph (b) of ORS 308.142(1) squares exactly with the definition of "unit of property" under Measure 50, as determined by the Supreme Court in *Flavorland Foods v. Washington County Assessor*, 334 Or 562, 591, 54 P3d 582 (2002) ("We conclude that the voters intended the phrase 'each unit of property in this state' to

---

[9] This court has defined "assessment" generally, for locally assessed property, as the annual process of valuing property and recording specified information about it on the roll. *See Gray v. Dept. of Rev.*, 23 OTR 220, 230-32 (2018). For centrally assessed property a similar working definition would seem to apply. *See* ORS 308.540 (department to prepare assessment roll annually, showing assessed value of centrally assessed property); ORS 308.560(2) (specifying additional information to be shown on central assessment roll); *see generally Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 553, 226 P3d 28 (2010) (declining to "engage in the complicated and nuanced analysis of whether and when 'assessment' is 'taxation'").

refer to *all the property in a property tax account*, which, in this case, includes both land and improvements." (Emphasis added.)). This same reading also fits with the definition of "property" that is locally assessed, in the preceding paragraph of the same statute: "'Property' means *** all *property* included within a single property tax account." ORS 308.142(1)(a) (emphasis added).[10]

Additional relevant context is in the provisions governing "new property or new improvements"—the statutes most directly at issue in the case, which the legislature also enacted as part of the Measure 50 implementation law. *See* ORS 308.149(6) (defining "new property or new improvements"); ORS 308.153 (applying same); Or Laws 1997, ch 541, §§ 9, 11. The court observes first that the definition in ORS 308.149(6)(a) refers repeatedly to physical activities such as "construction" of property, "remodeling" of property, "renovation" of property, and "rehabilitation" of property. These terms would be difficult to apply to the abstract concept of "value," yet no provision in ORS 308.149(6) suggests that a centrally assessed taxpayer is protected from a potential MAV increase when it holds property that undergoes construction or any of the other listed changes.

The statutory definition of "new property or new improvements" begins by declaring: "'New property or new improvements' means *changes in the value* of property as the result of *** [n]ew construction ***." ORS 308.149(6) (emphasis added). Here too, the legislature seems at first blush to define "property" as something else ("changes" or "changes in value").[11] But the court must, if possible, read the statute consistently with the portion of Measure 50 that the statute interprets. *See Salem College & Academy, Inc.*

---

[10] This latter definition in paragraph (a) of ORS 308.142(1) might have resolved the issue in *Flavorland Foods*, which involved locally assessed property. However, for tax year 1998-99 at issue in that case, ORS 308.215(1) contained a contradictory instruction. *See Flavorland Foods*, 334 Or at 565 n 2. Although the legislature eliminated the contradiction by amending ORS 308.215 in a 1999 technical corrections bill, the Supreme Court chose to not rely on either statute. *See id.*; *see also* Testimony, House Committee on Revenue, HB 2129, Mar 16, 1999, Ex 3 (statement of James Manary, Department of Revenue) (describing Measure 50 "clean-up" provisions).

[11] The first entry listed in *Webster's* defines the noun "change" as the "action of making something different in form, quality or state ***." *Webster's* at 374.

*v. Employment Div.*, 298 Or 471, 481, 695 P2d 25 (1985). Section 11(9)(a) of Measure 50 defines "improvements" in terms that reflect the ordinary meaning of "property":

> "'Improvements' includes new construction, reconstructions, major additions, remodeling, renovation and rehabilitation, including installation, but does not include minor construction or ongoing maintenance and repair."

Or Const, Art XI, § 11(9)(a). And the next subsection in Measure 50 states:

> "In calculating the addition to value for new property and improvements, the amount added shall be net of the value of retired property."

Or Const, Art XI, § 11(9)(b). The references in subsection (b) to the value "for" or "of" property show that the legislature in framing Measure 50, and the people in adopting it, understood property as different from value or changes in value, undermining any interpretation of ORS 308.149(6) that would equate those terms.[12]

Most telling is the portion of the definition of "new property or new improvements" that directly applies here: "The addition of machinery, fixtures, furnishings, equipment or other *taxable* real or personal property to the property tax account." ORS 308.149(6)(a)(C) (emphasis added). That provision requires that the "new" property that is added be "taxable." As the court pointed out in its order, to be taxable, property must be "within [the state's] territorial limits." *Cleveland, C., C. & St. L. Ry. Co. v. Backus*, 154 US 439, 446, 14 S Ct 1122, 38 L Ed 1041 (1894). For centrally assessed property, the reference to "taxable" property thus invokes the "situs" limitation. *See* ORS 308.515(1)

---

[12]  The court is aware of one other instance in which resort to context is required in order to understand whether the legislature intended to refer to "property" as opposed to the "value" of property. ORS 308.550(1) states in part: "[I]f the department values the entire property within and without this state as a unit, it may *ascertain the property subject to taxation* in Oregon by the proportion" of miles of rail, wire, pipe or lines in Oregon vs. everywhere. (Emphasis added.) On its face, subsection (1) seems to support the department's view that the allocated system "value" *is* the "property subject to taxation in Oregon." However, the legislature's intent becomes clear in subsection (2), which describes the function of subsection (1) as determining "*the value of* any property having a situs in this state." ORS 308.550(2). (emphasis added).

(requiring department to "make an annual assessment of any property that has a situs in this state" if used or held for use in a listed business); ORS 308.505(10) (defining "'property having situs in this state'" as property "situated wholly within" Oregon or as proportion of "movable, transitory or migratory personal property" used partly within and partly without Oregon). By contrast, the point of unit *valuation* is to allow the state to look beyond property sitused within its borders in order to determine the in-state value as an allocated share of the overall valuation unit.

Based on this statutory context, the court concludes that ORS 308.149(6)(a)(C) treats only the addition of *Oregon* real property, *Oregon-sitused* tangible personal property, or *Oregon-sitused* intangible property as triggering the "exception" for new property under Measure 50. If this exception applies, there is no doubt that ORS 308.555 allows the department to use the allocated value of the worldwide valuation unit to determine the value that this new property adds to the MAV of the Oregon unit of property. However, the addition of property sitused outside Oregon does not cause the new property "exception" to apply.

The parties have not submitted legislative history. The court is generally aware that the combined volume of material is voluminous, encompassing Measure 47 as drafted by its proponents and presented to the voters in 1996 (*former* Or Const, Art XI, §§ 11, 11f-11j (1996)), Measure 50 as drafted by working groups with legislative oversight and as referred to the voters for the May 1997 election (SB 1215 (1997)), and the statutes implementing Measure 50, which the legislature began working on before the May 1997 election and adopted a few weeks thereafter (SB 541 (1997)). From the limited portions readily available to the court at reasonable expense and under pandemic conditions of access, the court has found only a passing reference in the committee hearings on SB 1215 (1997). Legislative Revenue Officer Jim Scherzinger explained to the Senate Revenue Committee:

> "One of the issues that comes up here * * * is, 'what is the unit of property?' * * * In other words, when we say that the value of the property * * * cannot grow by more than 3%, the question is, 'what is the property? What do you define

the property to be?' \*\*\* If you have an industrial plant, is the whole plant just one property? Or [are] different pieces of it different pieces of property? \*\*\* Under current law for Measure 5, it says that 'all contiguous property within a single code under common ownership in use or appraised for a single integrated purpose, whether taxed as a single account or multiple accounts, is the unit of property for Measure 5.'

"\* \* \* \* \*

"\*\*\* [W]hat the [proposed] statute does do here \*\*\*, is that [the] 'unit of property' would be the property tax account. So, if you have two separate tax accounts, \*\*\* that would be two units of property \*\*\* even though they're contiguous.

"\* \* \* \* \*

"\*\*\* [W]*hat this measure does is make the unit of property to be an account, except for utilities, which is the entire utility statewide.*

"The key point—and there's a little example here that shows you that—it does make the value of your property partially dependent on how the assessor splits the property into accounts."

Audio, Senate Committee on Revenue, HB 2129, June 3, 1997, 10:01:13 - 10:05:52 a.m. (statement of Jim Scherzinger, Legislative Revenue Office), *available at* http://records.sos.state.or.us/ORSOSWebdrawer/Record/7519797 (emphasis added). Although imprecise and of only modest weight, this conversational statement tends to support the court's view that the legislature did not intend, either in Measure 50 or in ORS 308.142(1)(b), to introduce a new and unusual concept that "property" is "value." Rather, the court believes that the legislature would have understood this comment as emphasizing that the unit of property for a centrally assessed taxpayer is the statewide property, and that the MAV of that unit of property should be set for the unit, not for component items of property within that unit.

As in its original order, the court concludes that the department's position goes too far, conflating the concept of unit valuation with the taxable unit of property sitused in Oregon. The department continues to maintain that

"[a]ssets are not separately assessed," implying that the Oregon unit of property for Measure 50 purposes is a conceptual construct created simply by formulaically allocating the dollar amount of the worldwide valuation unit. Based on the foregoing analysis of the text, context, and available legislative history of the statute on which the department relies, however, the court reaffirms its conclusion that the legislature and the people intended the unit of property to refer to the property sitused in Oregon, including all Oregon-sitused real property, Oregon-sitused tangible personal property or Oregon-sitused intangible property. The evidence shows that taxpayer acquired the same unit of property that had been assessed to Chevron for tax year 2013-14, and that taxpayer added no Oregon-sitused new property or new improvements as of tax year 2014-15. Accordingly, ORS 308.162(1) "precludes revaluation" of the Property's MAV. *DISH Network*, 364 Or at 284.

The court hereby grants the department's motion and replaces the section of the February 19, 2021, order entitled "CONCLUSION," and all subsequent text in that order, *Tesoro I*, 24 OTR at 452-53, with the following:

### "CONCLUSION

"Because the evidence demonstrates that taxpayer acquired the unit of property previously assessed to the account of Chevron, the court applies ORS 308.162(1) and grants taxpayer's motion for case TC 5252 and tax year 2014-15. The court directs the parties to confer and seek agreement on the MAV for each of the Later Years. Now, therefore,

"IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted. The MAV of the Property in Plaintiff's account is $10,786,200; and

"IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is denied."

Now, therefore,

IT IS ORDERED that Defendant's Motion for Reconsideration is granted. The order dated February 19, 2021, is modified and adhered to as modified.